ALLIED AMERICAN INSURANCE COMPANY *et al.*, Plaintiffs-Appellants, v. JOHN E. WASHBURN, as Director of Insurance, Defendant-Appellee.

First District (5th Division)   No. 85—1872

Opinion filed August 14, 1987.

Beermann, Swerdlove, Woloshin, Barezky & Berkson, of Chicago (Alvin R. Becker and Howard A. London, of counsel), for appellants.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and William D. Frazier, Assistant Attorney General, of Chicago, of counsel), for appellee.

JUSTICE PINCHAM delivered the opinion of the court:

Plaintiffs Allied American Insurance Company and Coronet Insurance Company issue automobile insurance policies and are insurance companies licensed and regulated by the State of Illinois. The defendant, John E. Washburn, is the Director of Insurance of the State of Illinois. Section 143(2) of the Illinois Insurance Code (Ill. Rev. Stat. 1985, ch. 73, par. 755) empowers the Director of Insurance to prohibit the issuance of any insurance policy that "contains inconsistent, ambiguous or misleading clauses, or contains exceptions and conditions that will unreasonably or deceptively affect the risks that are purported to be assumed by the policy." Pursuant to the powers conferred by this statute, and in response to complaints from insured motorists and others, the Director of Insurance promulgated Rule 937.30 (adopted at 9 Ill. Reg. 3717 (eff. March 15, 1985)). Said rule provides in pertinent part as follows:

"No policy of automobile insurance which provides physical damage coverage on a stated amount or stated value basis shall contain a provision that the limit of liability of the insurance

company will be decreased based on a schedule of depreciation from the amount stated in the policy."

On March 14, 1985, plaintiff filed a complaint for declaratory judgment in which plaintiffs sought a declaration from the court that Rule 937.30 was invalid on the ground that the Director of Insurance lacked authority to enact it. Plaintiffs alleged, *inter alia*, that they issued "stated value" automobile insurance policies and had done so for many years, that those policies provided for coverage on the basis of a stated value of the automobile less its depreciation and that the Director of Insurance had never directed plaintiffs not to issue such a policy.

The Director of Insurance filed a motion for summary judgment in which the Director contended that an automobile insurance policy which provided for physical damage coverage based on a stated value of the vehicle less its depreciation is inherently unreasonable and unconscionable and that plaintiffs' policies were manifestly inconsistent, misleading, and unreasonably affected the risks purportedly assumed by plaintiffs and the insurers. Therefore, the Director contended, he was authorized, indeed mandated, by sections 143(2) and 401 of the Illinois Insurance Code (Ill. Rev. Stat. 1985, ch. 73, pars. 755, 1013) to promulgate Rule 937.30, to prohibit the issuance of such policies.

Plaintiffs admitted in their cross-motion for summary judgment that the Director was authorized to prohibit the issuance of misleading, inherently unreasonable and unconscionable insurance policies. Plaintiffs urged, however, that the Director lacked authority to totally bar the issuance of all automobile insurance policies which covered physical damage based on a stated value of the vehicle less its depreciation. Plaintiffs argued that Rule 937.30 did not outlaw a misleading policy, but instead outlawed a type of insurance coverage, *i.e.*, physical damage based on a stated value less depreciation, which the Director was powerless to bar.

The trial court held that Rule 937.30 was a proper promulgation of the Director's authority and granted the Director's motion for summary judgment. Plaintiffs appeal. The sole issue before this court on appeal is whether the Director had the authority to enact Rule 973.30, completely banning the issuance of all automobile insurance for physical damage coverage based on a stated value of the automobile less its depreciation. We reverse.

The Director's authority to adopt rules regulating the issuance of insurance policies is conferred by sections 143(2) and 401 of the Illinois Insurance Code (Ill. Rev. Stat. 1985, ch. 73, pars. 755, 1013) which, respectively, provide in pertinent part as follows:

Section 143(2):

"Casualty, fire and marine. The Director shall require the filing of all policy forms issued by any company transacting *** business ***. *** If the Director shall find from an examination of any such policy form *** that it violates any provision of this Code, contains inconsistent, ambiguous or misleading clauses, or contains exceptions and conditions that will unreasonably or deceptively affect the risks that are purported to be assumed by the policy, he shall order the company or companies issuing such forms to discontinue the use of the same."

Section 401:

"General Powers of the Director. The Director is charged with the rights, powers and duties appertaining to the enforcement and execution of all the insurance laws of this State. He shall have the power

(a) to make reasonable rules and regulations as may be necessary for making effective such laws."

■ The Director's power to promulgate rules regulating the issuance of insurance policies is governed by the aforesaid Insurance Code provisions. A rule promulgated by the Director which he was not empowered to adopt is invalid and enforcement of such a rule may be prohibited and enjoined. (See *Aurora East Public School District v. Cronin* (1981), 92 Ill. App. 3d 1010, 1014, 415 N.E.2d 1372.) The Director's rulemaking authority is limited to regulating the terms and provisions of insurance policies. He is not empowered to outlaw a particular kind of insurance coverage. That authority, if it exists, is vested in the General Assembly.

By promulgating Rule 937.30, the Director prohibited all insurance for automobile coverage based on a stated value of the automobile and its depreciation.

The Director did so because he concluded that such insurance unreasonably and deceptively altered the coverage that the insurance company purported to assume in the policy and that such insurance inherently contained inconsistent, ambiguous and misleading clauses and conditions.

The Director argues before this court that such a policy is inherently unreasonable and unconscionable. The Director urges that such a policy could allow depreciation at a pace faster than the actual cash value depreciation and would therefore violate the insured's expectation that payment under the policy would provide adequate funds to purchase a similar vehicle.

"Actual cash value" is defined in *Crandall v. Country Mutual In-*

*surance Co.* (1980), 81 Ill. App. 3d 140, 144, 400 N.E.2d 1100, as "replacement cost new less normal depreciation, though it may be determined by current market value of similar property or by the cost to replace or repair the property."

A "stated value" policy differs from an "actual cash value" policy in that in the former the insurance company's liability for the automobile's loss is set forth at a specified amount, predetermined by the company and the insured, while liability in the latter is determined after the loss, by calculating the actual cash value of the automobile immediately before the loss.

It appears that originally, stated value policies were used to insure antique autos, which increase rather than depreciate in value over the years. In the early 1980's several insurance companies began to issue stated value policies for any automobile. These stated value policies included a depreciation schedule whereby the automobile was covered for a specified amount or stated value at the inception of the policy and the coverage declined in accordance with the depreciation schedule.

Depreciation is defined as "[a] decline in value of property caused by wear or obsolescence and is usually measured by a set formula which reflects these elements over a given period of useful life of property." Black's Law Dictionary 397 (5th ed. 1979).

Depreciation is recognized by the Director as a factor to be considered in determining the value of property. However, the Director does not explain why an insurance coverage based on an agreed depreciation schedule is *per se* unconscionable or inherently misleading. A particular rate of depreciation may be unconscionable or unreasonable and another rate may not be. But Rule 937.30 absolutely prohibits all automobile insurance coverage which is based on a stated value of the automobile and any depreciation schedule. A depreciation clause is somewhat analogous to a liquidated damages clause in a contract. "It is axiomatic that a predetermined damages clause will be given effect if the actual damages are difficult to ascertain and the liquidated damages provision is a reasonable estimate of the damages which would actually result from a breach of the contract. [Citations.] The courts will also uphold a liquidated damages clause, even absent any proof of actual damages, where the parties have agreed to have the damages provided in the contract ascertained on a particular basis and such provision is reasonable at the time of contracting." *Hayden v. Keepper-Nagel Inc.* (1978), 62 Ill. App. 3d 828, 830-31, 379 N.E.2d 116.

Insurance coverage for the loss of an automobile predicated on a stated value of the automobile less its depreciation, based on a depreciation schedule determined and agreed upon between the insured and

the insurer, is a reasonable and efficient method of determining the insured's coverage and the insurer's liability for the loss of the automobile. A depreciation schedule is an easily understood, predetermined method for measuring the value of the automobile at the time of loss. It simplifies the claim process by eliminating costly and time-consuming disputes and litigation over the "actual cash value" of the loss vehicle.

▪ The Director suggests that an automobile has an "actual" or "true" cash value and that any predetermined formula for the subsequent evaluation of an automobile is unconscionable if it may result in a value less than its "actual" or "true" cash value.

The value of an automobile, like any other chattel, is conjectural, speculative, indefinite, uncertain and is influenced and determined by many undefined and often undefinable variables and factors, *i.e.*, the buyer's desire for the vehicle and the seller's reluctance to depart with it, age, condition and appearance of the vehicle, location and time of year, the financial ability of the buyer to purchase the vehicle and the seller's need for the purchase price. In *Crandon v. Country Mutual Insurance Co.* (1980), 81 Ill. App. 3d 140, 143, 400 N.E.2d 1100, the court aptly pointed out, "[g]iven the atmosphere of an oriental bazaar which notoriously pervades the used car market, it defies reason to say that anyone, or any department of government, could establish an unmistakable price for such a chattel."

A reasonable depreciation formula avoids chaos and uncertainty and provides an orderly, fair and precise method for determining the value of the automobile and thus the loss and coverage. The Director was powerless to absolutely ban this formula of insurance coverage. Rather, his duty was to determine its reasonableness and fairness. Should he determine that a certain insurance policy providing coverage based on a stated value with a depreciation clause is unreasonable, deceptive, or misleading, and deprives the insured of his expected insurance coverage or beneficially alters the insurer's liability, the Director may require that the offensive language be eliminated or altered to avoid the deception in order to accurately state the insured's expectations and the insurer's obligations. The Director, however, is powerless to bar all automobile insurance policies simply because their coverage is based on a stated value and a depreciation schedule.

An insurance policy that provides for coverage for loss based on a stated value less a predetermined depreciation schedule does not favor the insurer or the insured. Although it limits the insurer's liability, it likewise assures the insured a designated recovery in event of loss, even though the automobile may be worth less at the time of the loss.

The stated value as well as the depreciation schedule is negotiable in the marketplace between the insurer and the insured when bargaining for coverage and the issuance of the insurance policy.

A stated value policy with a predetermined depreciation schedule provides the insurer and the insured the precise amount of coverage provided. The amount of coverage will decrease with the passing of time, but the amount of the decrease is disclosed and reflects the reality that the value of an automobile decreases with use and age.

■ To be informed of or to understand the coverage provided by a stated value policy with a predetermined depreciation schedule, the insured need only negotiate with the insurer and read the policy issued by the insurer, which is the insured's duty. (*Floral Consultants, Ltd. v. Hanover Insurance Co.* (1984), 128 Ill. App. 3d 173, 176, 470 N.E.2d 527.) If, however, the Director suspects that the insured public may not understand the terms of the policy or the extent of the policy's coverage, the Director may require the insurer to disclose understandable explanations in the policy. Plaintiffs in their brief urge the following example:

"AMOUNT OF COVERAGE IN THE
EVENT OF THEFT OR TOTAL LOSS

THE CURRENT INSURED VALUE OF YOUR AUTOMOBILE IS $10,000.

FOR PURPOSES OF PROPERTY DAMAGE COVERAGE UNDER THIS POLICY, THAT VALUE WILL DECREASE AT THE RATE OF TWO PERCENT (2%) PER MONTH.

THE FOLLOWING SCHEDULE SHOWS THE PAYMENT YOU WILL RECEIVE IF YOUR AUTOMOBILE IS STOLEN OR TOTALLY DESTROYED DURING THE TERM OF THIS POLICY.

| MONTH | AMOUNT OF COVERAGE |
|---|---|
| First | $ 9,800.00 |
| Second | 9,600.00 |
| Third | 9,400.00 |
| Fourth | 9,200.00 |
| Fifth | 9,000.00 |
| Sixth | 8,800.00" |

■ Plaintiffs represent to this court that insurance policies with coverage based on stated value less depreciation are issued for only a six-month term and plaintiffs argue that the above explanation in the policy refutes the contention that stated value coverage with prede-

termined depreciation is inherently misleading or deceptive. We agree.

■■ We note, however, that this policy exemplar set forth above and in plaintiff's brief in this court was not the policy involved in this case in the trial court. The policy in the court below is misleading and ambiguous. On the first page of it, there is stated in large legible print, "property damage liability of $10,000 for each occurrence." Later in the policy, however, in almost illegible small print there is stated:

> "The maximum liability of the company under Coverages D and E shall automatically decrease 2% for every month or part thereof the policy shall have been in force. The total percentage deduction shall be computed on the whole amount in one sum and not by monthly deductions. In the event the company opts to treat a damaged vehicle as a total loss, the company's responsibility shall be limited to the payment of the stated value as listed in the declarations minus 2% of said stated value for each month or part thereof the policy shall be in force and also minus the deductible amount listed on the declaration page."

Although the Director lacks authority to bar all stated value insurance policies, the Director does have the authority, and indeed the duty, to direct an insurance company to cease and desist from issuing insurance policies that contain "inconsistent ambiguous or misleading clauses or contains exceptions and conditions that will unreasonably or deceptively affect the risks that are purported to be assumed by the policy." (Ill. Rev. Stat. 1985, ch. 73, par. 755.) While holding today that the Director lacked authority to totally bar the issuance of stated value insurance policies with a predetermined depreciation schedule, we recognize that the Director unquestionably has the authority to regulate the manner in which stated value insurance is sold and to prohibit deception in such insurance policies as well as unfair and unreasonable depreciation rates.

The Director lacked authority, however, to enact Rule 937.30, which absolutely barred the issuance of such policies. The trial court erred in holding that the Director had such power and in granting defendant's motion for summary judgment. We reverse the judgment and remand with directions to grant plaintiff's motion for summary judgment and to enter a permanent injunction restraining enforcement of Rule 937.30.

Reversed and remanded.

SULLIVAN, P.J., and MURRAY, J., concur.